ERIC GRANT
United States Attorney
JASON HITT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:24-CR-00302-JAM |
|---|---|
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| v. | |
| JULIAN RAYMOND ORTIZ, | |
| Defendants. | |

The United States respectfully submits its opposition to the motion to dismiss the Indictment pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure filed by defendant Julian Ortiz ("defendant" or "Ortiz").  ECFs 22, 23.

In short, the motion should be denied because Ortiz provides no legal basis for the Court to exercise authority to take the extreme step of dismissing a validly-returned Indictment on the basis of delayed reimbursement for attorney fees.  Legislative disfunction has nothing to do with the remedy sought: dismissing an Indictment.  It has even less to do with a defense counsel's obligation to represent their client consistent with a presumption that a lawyer "will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand." *United States v. Walter-Eze*, 869 F.3d 891, 902 (9th Cir. 2017).  Nothing in defendant's motion supports the remedy he seeks.  His motion should therefore be denied.

## I. BACKGROUND

A Sacramento grand jury indicted Ortiz for distribution of methamphetamine on November 7, 2024. ECF 1. Ortiz appeared for arraignment on November 15, 2024, and, at that hearing, the Magistrate Judge appointed the Federal Defender's Office to represent him. ECF 7. On November 18, 2024, Ortiz appeared for a detention hearing and, at this hearing, the Magistrate Judge appointed current counsel to represent the defendant. ECF 10. In January 2025, the parties entered into a protective order governing discovery, ECF 15, and continued scheduled status conferences until May 20, 2025. ECF 20. At a hearing before the Court on May 20, the Court set a change-of-plea or trial setting hearing for August 5, 2025. ECF 20. During the August 5 hearing, the Court set a jury trial for January 26, 2026, with time excluded from the Speedy Trial Act based upon defense counsel's need to prepare for trial. ECF 21.

Ortiz's counsel ceased receiving payments in July 2025, and remains without funding in October 2025. ECF 23, at 2.

CJA panel funds are disbursed by the Judiciary pursuant to 18 U.S.C. § 3006A. The United States Courts have publicly acknowledged that CJA panel attorney funds were depleted around July 3, 2025. CJA Panel Attorney Funds Information FY 2025, updated Sept. 24, 2025, at *https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-information-fy-2025*. The Courts have also publicly acknowledged that funds were de-obligated in September, allowing a batch of payments to be made on September 18, 2025. *Id.*

On October 4, 2025, Oritz filed a motion to dismiss under Fed. R. Crim. P. 12(b)(1), alleging a Sixth Amendment violation based upon the delayed reimbursement of legal fees from the CJA fund. ECF 22. Oritz filed an amended motion to dismiss on the same day. ECF 23.

Ortiz's counsel has "continued to represent the Defendant to prevent immediate prejudice" but describes the "situation" of lapsed funding as creating "an untenable conflict between counsel's professional obligations and their basic economic survival." ECF 23, at 2. Ortiz's counsel has not moved to withdraw from the case.

## II.   ANALYSIS

### A.   Standard under Rule 12

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citing *United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989)).

When a court considers a Rule 12(b) motion to dismiss, "[t]he allegations of the indictment are presumed to be true." *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).

### B.   The Indictment alleges a violation of 21 U.S.C. § 841(a)(1)

The Indictment charging Ortiz alleges that he distributed methamphetamine on April 30, 2024, in Sacramento County in violation of 21 U.S.C. § 841(a)(1). ECF 1, at 1. Under Rule 12(b), the allegations are sufficient to put Ortiz on notice of the crime charged. Ortiz's motion to dismiss makes no claim of "former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction," nor could he. *Nukida*, 8 F.3d at 669. Because Ortiz has no legally-cognizable basis to seek dismissal of the Indictment, he fails to carry his burden under Rule 12(b) and his motion should be denied.

### C.   Ortiz's theories of dismissal are meritless

Ortiz does not point to any federal court which has ever found that a delay of reimbursement to CJA counsel justifies the extreme remedy of dismissing an indictment. Ortiz also fails to allege any facts that his counsel will not be paid for his representation – rather, the motion alleges that a delay in payment of legal fees somehow rises to the level of a constitutional violation under the Sixth Amendment.

#### 1.   Conflict of interest

The Sixth Amendment guarantees a criminal defendant the right "to have the [a]ssistance of [c]ounsel for his defense." U.S. Const. Amend. VI. A defendant is entitled to conflict-free legal assistance. *See Wood v. Georgia*, 450 U.S. 261, 271 (1981).

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

3

To establish a Sixth Amendment violation for a conflict of interest,[1] a defendant must show: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The defendant bears the burden of proving a Sixth Amendment violation. *United States v. Kriens*, 270 F.3d 597, 603 (8th Cir. 2001).

The Ninth Circuit has never held that nonpayment of legal fees can create a conflict of interest that rises to a Sixth Amendment violation under *Sullivan*. Rather, it has noted that while issues with payment could "create a theoretical conflict of interest, they do not typically create actual conflicts . . . ." *Bonin v. Calderon*, 59 F.3d 815, 827 (9th Cir. 1995) (abrogated by statute on other grounds). As recently as 2024, the Ninth Circuit has explained that "accepting representation for financial benefit is not the type of conflict envisioned by *Sullivan*." *Atkins v. Bean*, 122 F.4th 760, 786 (9th Cir. 2024). The Ninth Circuit maintains a presumption that a lawyer "will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand." *Walter-Eze*, 869 F.3d 891, 902 (9th Cir. 2017) (citing *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975)). This presumption of ethical behavior "must necessarily fade where . . . counsel explicitly favors his own pecuniary interests above his client's interests." *Id.*

To the extent that an attorney's pecuniary interests lead them to shirk their ethical obligation to provide dutiful representation, and an actual conflict exists, that Sixth Amendment claim is ultimately evaluated under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Bonin,* 59 F.3d at 827.

Here, Ortiz's counsel has explicitly disclaimed a failure to zealously represent his client and, instead, argues that "an untenable conflict between counsel's professional obligations and their basic economic survival" has arisen. ECF 23, at 2. Nothing in Ortiz's motion suggests or states that counsel will not continue to represent him according to counsel's ethical obligations, even absent the payment of fees on other cases. To the extent that defendant's counsel is unable to perform their ethical duties due

---

[1] Ortiz does not directly raise that a conflict of interest has arisen between him and his counsel. Instead, he says the conflict is "between counsel's duty to zealously represent the client and counsel's need for economic survival." ECF 23, at 3. The Government interprets this as raising a conflict of interest, as that is the primary vehicle through which courts have addressed similar arguments regarding non-payment of legal fees.

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

4

to the lapse of payment, the remedy is not dismissal of the Indictment and, instead, it is to file a motion to withdraw.

It should also be noted that all of the cases addressing nonpayment of legal fees involve circumstances in which an attorney was not being paid, and had no guarantee of future payment – a significant distinction from Ortiz's counsel, who is entitled to reimbursement of fees through a fund administered by the Judiciary. As a result of exhaustion of funds, that payment has been delayed, but not eliminated. If instances in which a defense counsel is not being paid by a client, and has no expectation of such payment, do not rise to Sixth Amendment violations, it follows that this Court should not rule in the first instance that delayed reimbursement of CJA funds creates such a Sixth Amendment conflict.

### 2. Dismissal is not an available remedy

The government has not located a single case in which a remedy other than withdrawal or a continuance was granted due to nonpayment, or delayed payment, of legal fees. A separate area of law governs Sixth Amendment violations in which the government intrudes into the attorney-client relationship. For instance, courts have examined fact patterns where counsel was prohibited from communicating with a defendant, where law enforcement officers improperly listened in to privileged communications, and where post-indictment line-ups were performed without the defendant having the benefit of counsel. *See United States v. Morrison*, 449 U.S. 361, 364-65 (1981) (compiling cases). These violations are based upon circumstances on which there is a direct intrusion or prohibition on access to counsel – a far more severe potential violation than delayed reimbursement.

Even in those cases, cases involving Sixth Amendment deprivations to the defendant are subject to the rule that remedies be tailored to the injury caused, and dismissal of an indictment is a remedy of last resort. *Morrison*, 449 U.S. at 365. Where there has been government interference with the attorney-client right, even if that action is deliberate, dismissal of the indictment is "plainly inappropriate" absent demonstrable prejudice. *Id.* Absent a showing of prejudice to counsel's ability to provide adequate representation or an adverse impact upon proceedings, even a flagrant violation of the Sixth Amendment does not warrant dismissal of an indictment. *Id.*

Ortiz fails to carry his burden under Rule 12 to demonstrate that the remedy sought bears any relation to the basis of the motion. Indeed, Ortiz's motion does not cite to a single case in which a court dismissed an indictment based upon nonpayment of legal fees or delayed reimbursement of legal fees. Rather, he cites to a single state case in which dismissal did *not* occur, but rather the case was remanded for further consideration. ECF 23, at 4.

In *State v. Peart*, the State of Louisiana appealed a ruling by a trial court ordering a number of actions to remedy an underfunded and overtaxed public defender program. 621 So.2d 780, 792 (La. 1993). The trial court did not dismiss an indictment and, instead, ordered counsel's "case load reduced" and ordered "the legislature to provide funding for an improved library and for an investigator" for the lawyer. *Id.* at 784–85. The trial court further ordered "that the legislature provide funds to OIDP to pay additional attorneys, secretaries, paralegals, law clerks, investigators, and expert witnesses." *Id.* Importantly, nothing in *Peart* stands for the proposition that a federal Indictment can be dismissed based upon a lawyer's inability to be compensated.

On appeal, the Louisiana Supreme Court remanded to the trial court to hold a hearing for each indigent defendant represented by defense counsel to assess whether each client received effective assistance of counsel. *Id.* at 791. Where defendants were not receiving effective assistance, the trial judge should "not permit the trial of such cases to be conducted." *Id.* In sum, *Peart* did not endorse or authorize federal courts to dismiss valid Indictments in the circumstances currently facing Ortiz's counsel. Ortiz's argument that "the government's failure to ensure defense counsel compensation while continuing prosecution warrants dismissal" misses the mark because it is the Legislative Branch, not the Executive, that is responsible for the lapse in funding. ECF 23, at 4. It makes no sense to seek a remedy that is untethered to the basis of the claimed violation.

Even assuming, *arguendo,* that a Sixth Amendment violation occurs when a CJA panel attorney receives delayed reimbursement of legal fees in other cases, alternate remedies for the potential conflict created with his client exist. First, the common remedy for where there is a conflict of interest between a counsel and his client – withdrawal. This is the precise remedy discussed in *Sullivan*, 446 U.S. at 345-346.

Local Rule 182(d) states that an attorney who has appeared must have leave of the court.

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

6

1  "Leave to withdraw may be granted subject to such appropriate conditions as the Court deems fit."

2  While withdrawal might be an appropriate remedy to request, this is not to say that withdrawal should be granted. Instead, courts have held that nonpayment of fees does not constitute a conflict of interest between a defendant and his counsel such that withdrawal is required. *See United States v. O'Neil*, 118 F.3d 65, 72 (2d Cir. 1997); *Caderno v. United States*, 256 F.3d 1213, 1219 (11th Cir. 2001) ("Although a 'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client). Delayed reimbursement of counsel's fees should not be grounds for withdrawal.

### 3.  **The Equal Protection Clause does not apply**

Without support, Ortiz claims that the government's prosecution with compensated counsel violates fundamental fairness and equal protection principles.[2] He has not alleged that the government has treated him differently than any other criminal defendant or made any other claim of a violation of equal protection. He does not argue that his counsel will not be compensated for his work on this case – only that compensation may be delayed, and that compensation on other cases has been delayed. Regardless, the Equal Protection Clause to the Constitution does not require equal pay for government lawyers and non-government lawyers.[3]

### 4.  **This Court should not consider principles of Dual Sovereignty in resolving the motion**

Ortiz offers an odd alternative to his current prosecution: he claims that he can be prosecuted by the state of California, even if this Court dismisses the Indictment. ECF 23, at 5. Ortiz claims that the theoretical "availability of state prosecution, where defense counsel will be compensated, provides a constitutionally sound alternative to continuing this federal prosecution." ECF 23, at 5. But, he is not

---

[2] It is unclear how Ortiz has standing to bring an equal protection claim relating to the relative pay of his attorney.

[3] Furthermore, as a result of the government shutdown beginning October 1, 2025, salaried government lawyers are working without pay, and reimbursement of the salary may be delayed, rendering this issue moot. *See U.S. Department of Justice FY 225 Contingency Plan,* dated September 29, 2025, available at https://www.justice.gov/jmd/media/1377216/dl. As discussed, Ortiz's counsel does not allege that they will not be paid for legal services – only that reimbursement is delayed.

currently charged with the same or a similar offense by the State of California.  While Ortiz's preference for his criminal case to be heard in a Superior Court courtroom is understandable because he would face lesser penalties, it has no legal force or basis.  Moreover, the argument that counsel favors a system where payments continue is in tension with the presumption that a lawyer "will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand." *Walter-Eze*, 869 F.3d at 902.  This presumption of ethical behavior "must necessarily fade where . . . counsel explicitly favors his own pecuniary interests above his client's interests." *Id.*  In any event, this Court should not entertain these arguments in resolving the motion because .

"Charging decisions are generally within the prosecutor's exclusive domain." *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983).  "Prosecutors-representatives of the executive branch of the government-are not mere servants of the judiciary." *Id.*  The "tradition of prosecutorial independence" is well established by precedent and the Federal Rules of Criminal Procedure.  *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), and Fed. R. Crim. P. 48(a)).[4]  Courts should "be wary of second-guessing prosecutorial choices" as the court is not in a position to know "which charges are best initiated at which time. . . which allocation of prosecutorial resources if most efficient . . . or the relative strengths of various cases and charges." *Miller*, 722 F.2d at 565 (citations omitted).

Ortiz's request for the Court to analyze whether his case would be better brought in state or federal court so that his counsel can be paid should be rejected because it seeks an improper exercise of judicial authority that exceeds what the Ninth Circuit and the Federal Rules of Criminal Procedure permit.

---

[4] It is settled law that a prisoner has no right to complain, and courts have no right to interfere, with executive decisions regarding which sovereign exercises priority of jurisdiction.  "It is well recognized rule of law that a person who has violated the criminal statutes of both the Federal and State Government may not complain of the order in which he is tried or punished for such offenses." *Gunton v. Squier*, 185 F.2d 470, 471 (9th Cir. 1950); *see also Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922) ("He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. … Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it."); *Stamphill v. Johnston*, 136 F.2d 291, 292 (9th Cir. 1943) ("the arrangement made between the two sovereigns, the state and federal governments, does not concern the defendant who has violated the laws of each sovereignty and he cannot in his own right demand priority for the judgment of either").

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

8

### III. CONCLUSION

The United States respectfully requests that the Court deny defendant's motion to dismiss the Indictment under Rule 12(b).

|  |  |
|---|---|
|  | ERIC GRANT<br>United States Attorney |
| Dated: October 14, 2025 | By: /s/ *Jason Hitt*<br>JASON HITT<br>Assistant United States Attorney |