UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JULIAN RAYMON ORTIZ,<br><br>　　　　Defendant. | No. 2:24-cr-00302-JAM<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I.   INTRODUCTION

The current Motion to Dismiss filed on behalf of Defendant Julian Raymon Ortiz ("Defendant") presents an issue of first impression with no known appellate court precedent. Specifically, Defendant moves this Court to dismiss the indictment in this matter under Federal Rule of Criminal Procedure 12(b)(1) arguing his Sixth Amendment Right to Counsel has been violated because his counsel, who was appointed and assigned to Defendant pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, has not received any compensation for her representation since June 2025.  This failure to pay these statutory mandated funds has created an untenable conflict

1

between her professional obligations to her client and her economic survival.  Defendant further argues that the Government's prosecution of this case has continued undeterred while defense counsel and staff remain unpaid, creating a fundamental imbalance in the adversarial system.

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to have Assistance of Counsel for his defense." Gideon v. Wainwright, 372 U.S. 335, 340 (1963).  This right requires the appointment of counsel for Defendant here who effectively assists him in his defense against the serious criminal charge he faces.  The right to counsel is meaningless without adequate resources to mount an effective defense.  Ake v. Oklahoma, 470 U.S. 68, 77 (1985).  Thus, Defendant asks that the charge against him be dismissed.  In the alternative, he requests that this matter be stayed; that he be released from custody pending resolution of the funding crisis; and/or his attorney be permitted to withdraw.

As discussed below, the Court finds that dismissal is warranted here.  The right to effective assistance of counsel is a bedrock principle of this country and is indisputably necessary for the operation of a fair criminal justice system.  The systematic and ongoing failure of the Government to fund CJA-appointed attorneys for the past five months has created an indefensible situation in which CJA defense counsel, such as counsel here, are expected to competently represent and defend their clients despite a complete lack of resources to do so.  Trial is set in this matter for January 26, 2026, a mere ten weeks from now.  To expect defense counsel to properly prepare

for trial, while consistently denying her the tools to do so is, in this Court's view, not only unconscionable but also unconstitutional. Under these unique and unprecedented circumstances, the Court finds that Defendant's constitutional right to an attorney who is obligated to zealously and adequately represent him has been violated. As for the remedy for this violation, the Court finds that dismissal of the indictment without prejudice is the appropriate remedy.

## II.  BACKGROUND

In 1964, responding to the Supreme Court's decision in Gideon v. Wainwright, 372 U.S. 335 (1963), Congress enacted the CJA "[t]o promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States." Pub.L. 88-455, 78 Stat. 552 (codified as amended at 18 U.S.C. § 3006A). Congress enacted the CJA to both "assure adequate representation in the Federal courts of accused persons with insufficient means," and to "afford[ ] reasonable compensation to counsel who are assigned." In re Smith, 586 F.3d 1169, 1175 (9th Cir. 2009) (quoting S. Rep. No. 88-346, at 1 (1963)). Thus, the CJA authorizes the appointment of, and compensation for, counsel to represent indigent defendants charged with federal offenses. 18 U.S.C. § 3006A. Attorneys are paid in accordance with the CJA both for hours spent before the court and those "reasonably expended out of court." 18 U.S.C. § 3006A(d)(1).

Congress's purpose behind instituting CJA compensation was to "ease the financial burden" associated with providing these

services which had been traditionally provided pro bono. United States v. Diaz, 802 F. Supp. 304, 307 (C.D. Cal. 1992). Indeed, in passing the CJA, many lawmakers "emphasized the shortcomings of the existing system under which counsel were assigned on an uncompensated, nonreimbursable basis" and "expressed concern for the stability of convictions if that system were to continue." United States v. Bailey, 581 F.2d 984, 988 (D.C. Cir. 1978). "Providing for compensation of such counsel was considered necessary to prevent the 'mere formal appointment' of counsel and to ensure reasonably diligent, conscientious and competent representation." Diaz, 802 F. Supp. at 307 (quoting Bailey, 581 F.2d at 988).

Defendant here was indicted on November 7, 2024, for one count of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). ECF No. 1. The Court held a detention hearing on November 19, 2024, during which Defendant was remanded into custody[1] and Defendant's current counsel was appointed under the CJA after his previous counsel, the Office of the Federal Public Defender, withdrew. ECF No. 10. The Court subsequently set a trial date for January 26, 2026. ECF No. 21.

At the time defense counsel was appointed, the Government was still in the process of paying CJA-appointed counsel, paralegals, investigators, and experts for expenses related to client representation. Mot. Dismiss at 1-2, ECF No. 23. Payments were initially delayed in June 2025 due to a system upgrade, and then completely stopped in July 2025. Id. at 2.

---

[1] Defendant remains in custody at the time of this Order.

Despite the Government's obligation under the CJA to pay appointed counsel, no payments to CJA-appointed counsel, paralegals, investigators, or experts have been made since then. Id. Accordingly, Defendant's counsel has worked without compensation on CJA cases since June 2025. Id. CJA counsel were assured that payments would resume once Congress passed a budget for Fiscal Year 2026. Id. However, to-date, Congress has failed to pass a federal budget, resulting in a continued funding lapse that began on October 1, 2025.

Defendant filed the pending Motion to Dismiss (ECF No. 23) on October 4, 2025, arguing that the ongoing CJA funding lapse necessitates dismissal of the indictment in this case as Defendant is being denied his Sixth Amendment Right to Counsel. The Government filed an Opposition (ECF No. 24), and Defendant filed a Reply (ECF No. 28). The Court held a hearing on November 4, 2025, and the Motion was taken under submission.

### III. LEGAL STANDARD

Under Rule 12(b) of the Federal Rules of Criminal Procedure, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'" United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993).

However, courts also possess inherent supervisory authority to remedy serious structural defects in the criminal process, see, e.g., United States v. Gonzalez-Lopez, 548 U.S. 140, 148

5

(2006) (recognizing structural error doctrine), and the judicial power to dismiss indictments in extreme cases under this supervisory authority.  See United States v. Struckman, 611 F.3d 560, 574 (9th Cir. 2010); United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992).  The Ninth Circuit has recognized three "legitimate reasons" for courts exercising supervisory powers to dismiss indictments: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct."  United States v. Matta-Ballesteros, 71 F.3d 754, 763 (9th Cir. 1995).  An indictment can only be dismissed under a court's supervisory powers where a defendant suffers "substantial prejudice" and "no less remedial action is available[.]"  United States v. Chapman, 524 F.3d 1073, 1087 (9th Cir. 2008) (quoting United States v. Jacobs, 855 F.2d 652, 655 (9th Cir. 1988) and United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir. 1991)).

**IV.   OPINION**

A.   Violation of Defendant's Sixth Amendment Right

Defendant seeks dismissal of the indictment in this case based on violations of his Sixth Amendment right to effective counsel.  Mot. Dismiss at 2-7.  As noted above, Defendant contends that the Government's systematic failure to provide the necessary and required resources for his defense to his counsel for the past five months has resulted in a violation of his constitutional right to representation.  This situation has resulted in an "untenable conflict between counsel's professional

6

1  obligations and their basic economic survival," which undoubtedly
2  prejudices Defendant as his counsel faces the prospect of
3  preparing for trial with no financial resources at her disposal.
4  Id. at 2.  Indeed, Defendant argues that "[n]o attorney can be
5  expected to work indefinitely without compensation while
6  maintaining the zealous advocacy required by professional
7  standards and constitutional mandate," and points out that
8  "[r]epresentation of a client includes conducting the necessary
9  investigation, assistance of experts and paralegals to prepare a
10 defense [which] cannot be done without compensation."  Id. at 3.
11 Thus, Defendant argues that the "prolonged non-payment of
12 appointed counsel violates [his] Sixth Amendment rights and the
13 fundamental guarantee of Gideon v. Wainwright."  Id. at 6.  The
14 Court agrees.
15    Here, Congress's prolonged failure to provide funding for
16 defense counsel violates Defendant's fundamental constitutional
17 right.  The Government argues that no constitutional injury has
18 occurred because "[n]othing in Ortiz's motion suggests or states
19 that counsel will not continue to represent him according to
20 counsel's ethical obligations, even absent the payment of fees on
21 other cases."  Opp'n at 4, ECF No. 24.  This argument ignores the
22 reality, however, that with only ten weeks until trial, defense
23 counsel finds herself in the impossible position of needing to
24 provide effective representation to Defendant without the ability
25 to pay for the resources required to do her job.  Defendant's
26 right to counsel is meaningless without adequate resources to
27 mount a defense.
28    The law is clear that it is not sufficient that Defendant be

nominally provided with counsel. Strickland, 466 U.S. 685-86. Rather, the Sixth Amendment requires that Defendant be provided with effective assistance of counsel. Id. at 686. This requirement cannot be satisfied under the current circumstances. Congress's failure to fund defender services has left appointed counsel and the providers necessary to properly prepare for trial unable to fulfill her constitutionally mandated duties. The Court holds, therefore, Defendant has been denied the right to effective assistance of counsel.

B.   Remedy for the Constitutional Violation

Defendant has also clearly suffered substantial prejudice stemming from this violation of his constitutional right. Defendant is incarcerated, his trial date is quickly approaching, necessitating increased attention and preparation by both the prosecution and the defense. But Defendant cannot prepare for trial or move his case forward because the resources needed to mount a defense have not been provided to him. Those resources would allow defense counsel to accomplish vital tasks to adequately represent Defendant at this stage, including investigating Defendant's case, hiring experts, researching and preparing motions in his defense, formulating a trial strategy, and preparing exhibits. These are all basic tools necessary to provide Defendant with effective representation that have been meaningfully impeded by the longstanding and ongoing lack of funding to conduct these tasks. In stark contrast, despite payments for CJA counsel having stopped in June, the Government's attorney admitted at the November 4 hearing that prosecution efforts have continued unabated through most of that time and he

1   is prepared to begin trial on January 26, 2026.  Thus, while
2   Defendant has no resources to defend himself in this case, the
3   Government has been able to fully engage in continued
4   investigation and trial preparation efforts without barriers.
5   Congress's astounding abdication of its duty to provide funding
6   for criminal defense counsel cannot be ignored or condoned.  The
7   prejudice to Defendant by such an unprecedented and glaring
8   imbalance in the criminal justice system must be remedied under
9   this Court's inherent supervisory authority.
10       The Government urges the Court to deny Defendant's motion to
11  dismiss by adopting the reasoning in the recently issued order in
12  United States v. Vasquez, No. 2:25-cr-0135-WBS, 2025 WL 2961906
13  (E.D. Cal. Oct. 20, 2025).  In Vasquez, the court denied a
14  similar motion to dismiss brought by CJA-appointed counsel who
15  had not been paid since June.  As Defendant argues, Vasquez
16  should not be followed by this Court because it relies on aging
17  precedent concerning the historical legal tradition of pro bono
18  service to conclude that there is no constitutional right for
19  court-appointed criminal defense counsel, including CJA counsel,
20  to receive compensation.  See id. at *2-6.  This analysis appears
21  to focus primarily on defense counsel rather than on the
22  Defendant and the impact on him caused by the Government's Sixth
23  Amendment violation.  The issue here is one of a violation of a
24  Defendant's right to adequate representation, not an attorney's
25  right to payment.  The Vasquez opinion fails to grapple with the
26  prejudice to defendants resulting from Congress's choice not to
27  provide the resources to which they are constitutionally
28  entitled.

The Court agrees with Defendant and declines to follow Vasquez. So long as no funding is being provided to Defendant, the government is actively impeding Defendant's right to counsel. This interference is so severe and beyond this Court's control there is no lesser remedy at the Court's disposal that can provide Defendant with the relief to which he is entitled. Under these circumstances, this chronic constitutional violation can only be remedied by a dismissal of the indictment.

When considering an exercise of its supervisory powers for violations of a defendant's constitutional rights, a district court has various options, which should be tailored to the injury caused. United States v. Morrison, 449 U.S. 361, 365 (1981). The most extreme remedy available — dismissal with prejudice — is not appropriate here. Such relief is only appropriate where there is "a clear basis in fact and law for doing so." Isgro, 974 F.2d at 1097; see also Chapman, 524 F.3d at 1085 (explaining that improper dismissal of "an indictment with prejudice encroaches on the prosecutor's charging authority" (internal quotation marks omitted)). Defendant has not made a showing that the Sixth Amendment violation here, while serious, merits such a drastic response.

In the alternative, the Government suggests that the Court permit defense counsel to withdraw, which is the "common remedy for where there is a conflict of interest between a counsel and his client." Opp'n at 6. The Government's suggestion fails to address, however, how the Court might find alternative counsel for Defendant given the severe funding lapse discussed above. Requiring or allowing counsel to withdraw would only result in

1  Defendant being left involuntarily *in propria persona* with a
2  looming trial date.  Thus, granting defense counsel's request to
3  withdraw is not a viable remedy.
4       The other two remedies suggested by the parties are to stay
5  the case without releasing the Defendant from custody or staying
6  the case and releasing the Defendant from custody.  The Defendant
7  opposes the former and the Government opposes the latter.
8  Moreover, neither remedy fully addresses the underlying
9  constitutional violation.
10      Ultimately, the Court finds that dismissal <u>without</u> prejudice
11 is the appropriate remedy for the constitutional violation at
12 issue here.  As discussed above, Defendant has unquestionably
13 suffered a violation of his constitutional right to counsel and
14 faced substantial prejudice as a result, warranting this result.
15 Dismissal without prejudice provides functionally the same level
16 of relief for Defendant as a stay and release from custody while
17 providing an opportunity for this prosecution to continue, albeit
18 possibly in a different venue.  As both parties must acknowledge,
19 Defendant can still be prosecuted in state court where his
20 constitutional right to adequate counsel would not be impaired.
21 Mot. Dismiss at 4-5.  Dismissal without prejudice also gives the
22 United States the opportunity to refile in federal court once
23 funding is available for CJA counsel and Defendant is again
24 afforded his Sixth Amendment Right to Counsel.  Finally, as
25 opposed to a stay, dismissal also ensures no conflict arises
26 between Defendant's speedy trial rights and the remedy granted by
27 the Court.  Given these considerations, the Court concludes that
28 "no lesser remedial action is available," <u>Chapman</u>, 524 F.3d at

1087, i.e., no lesser remedy fully addresses the damages caused by the government's misconduct.

To further ensure that the remedy is as closely tailored to the injury suffered and ensure it does not unnecessarily impede competing interests, the Court administratively stays this Order until November 21 at 5:00 p.m.  This will permit the Government to seek appellate review of this Order, should it decide to do so and/or file a motion for reconsideration should the current Government shut down end and adequate funding and resources to prepare for trial be provided to Defendant in a timely manner.

### V.   ORDER

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED.  The Indictment (ECF No. 1) in this matter is hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that this Order is administratively stayed until November 21, 2025.

IT IS SO ORDERED.

Dated: November 12, 2025

_____
JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE