UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JULIAN RAYMON ORTIZ,<br><br>    Defendant. | No. 2:24-cr-00302-JAM<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

### I.  INTRODUCTION

The Court granted dismissal of the Indictment in this matter on November 12, 2025, finding that an exceptionally prolonged lapse in Criminal Justice Act ("CJA") funding for Defendant's counsel had violated Defendant's Sixth Amendment right to effective assistance of counsel and prejudiced Defendant's ability to prepare an adequate defense for his January 26, 2026, trial.  The Government now seeks reconsideration of that dismissal, citing a recent temporary restoration of CJA funding for defense counsel, arguing this renders the harm suffered by Defendant moot and the remedy of dismissal too severe.

1

As explained below, the Court disagrees.  The restoration of CJA funding now does nothing to properly address the fact that Defendant was deprived of adequate resources to prepare a defense to the felony criminal charge against him for five months while the Government's preparations for trial, which is set to start a mere seven weeks from now, continued unabated.  The Government argues that a continuance, rather than dismissal, is the appropriate remedy now that funding has been restored to allow defense counsel additional time to prepare.  However, CJA funding has only temporarily been restored through the end of January 2026.  Even if this Court were to grant a continuance now, the record in this case reveals that it is reasonable to conclude that that Defendant may still not have adequate time to prepare for trial and that another funding lapse is a foregone conclusion.[1]  Under these unique and unprecedented circumstances, the Court declines to penalize Defendant by extending his pretrial detention time and jeopardizing his speedy trial rights based on such uncertainties.

Rather, the Court holds that dismissal without prejudice remains the sole lawfully appropriate remedy here.  Dismissal creates a more even playing field by turning back the clock and returning both the Government and Defendant to square one.

---

[1] The Court takes judicial notice that the most recent information provided by the Administrative Office of the Courts in its December 5, 2025 Memorandum is that the Senate Appropriations Committee's draft of the FY 2026 appropriations bill includes funding for Defender Services that would require suspension of panel attorney payments beginning on or about August 6, 2026, and the House of Representatives proposed funding would require panel attorneys payments to be suspended beginning around July 16, 2026.

1  Dismissal does not unfairly penalize the prosecutors since the
2  Government still has an opportunity to refile federal charges
3  against Defendant if it so desires.  At the same time it allows
4  Defendant a reasonable opportunity to prepare for trial without a
5  five-month long handicap.  The Court acknowledges that such
6  drastic measures may not be required in every, or indeed, most
7  cases where a Sixth Amendment violation has occurred.  In this
8  case, however, the Court denies the Government's Motion For
9  Reconsideration and reaffirms that dismissal without prejudice is
10 the appropriate remedy given Defendant's rapidly approaching
11 trial date and his inability to prepare at all for trial, as well
12 as the unprecedented and potentially ongoing CJA-funding crisis.

### II.  BACKGROUND

14    On October 4, 2025, Defendant Julian Raymon Ortiz moved this
15 Court to dismiss the indictment in this matter under Federal Rule
16 of Criminal Procedure 12(b)(1) because his Sixth Amendment Right
17 to Counsel was being violated.  ECF No. 23.  Defendant argued his
18 counsel, who was appointed pursuant to the CJA, 18 U.S.C.
19 § 3006A, had not received compensation for her representation
20 since June 2025 due to a CJA-funding shortage and ongoing
21 government shutdown, which Defendant argued impeded counsel's
22 ability to prepare an adequate defense, particularly in light of
23 Defendant's pending January 26, 2026, trial date.  Id.
24    The Court granted dismissal on November 12, 2025, holding
25 that the "systematic and ongoing failure of the Government to
26 fund CJA-appointed attorneys for the past five months" violated
27 Defendant's fundamental right to effective assistance of counsel
28 as, a mere ten weeks before trial, Defendant's counsel found

"herself in the impossible position of needing to provide effective representation to Defendant" with "no financial resources at her disposal" to do so. ECF No. 30. The Court noted that, while Defendant could not "prepare for trial or move his case forward because the resources needed to mount a defense ha[d] not been provided to him," the Government's prosecution efforts had continued unabated during the funding lapse such that the Government was fully prepared to begin trial on January 26, 2026. Id. Given this "unprecedented and glaring imbalance in the criminal justice system," the Court concluded that dismissal without prejudice was the sole remedy sufficient to address the prejudice suffered by Defendant on the eve of trial. Id.

Shortly thereafter, on November 13, 2025, Congress passed, and the President signed, a continuing resolution that provided funding for CJA lawyers through January 30, 2026, as well as funding for the backlog of CJA payments due from fiscal year 2025. See ECF No. 31 at 2. Given this development, the Government filed a Motion for Reconsideration (ECF No. 31) asking this Court to vacate its Order dismissing the indictment without prejudice and schedule a new date for trial. Defendant filed an Opposition (ECF No. 33), and the Government filed a Reply (ECF No. 34).

### III. LEGAL STANDARD

Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, the Ninth Circuit has held that motions for reconsideration may be filed in criminal cases. United States v. Martin, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) (citations omitted) ("[P]ost-

4

judgment motions for reconsideration may be filed in criminal cases."). In ruling on motions for reconsideration in criminal cases, courts rely on the standards governing reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b). United States v. Arcila, No. 3:14-cr-00267-HZ-3, 2024 WL 2048643, at *1 (D. Or. May 6, 2024) (citation omitted).

Reconsideration of an order is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Est. of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted). A court may reconsider its earlier decision if it "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). Ultimately, whether to grant or deny a motion for reconsideration is in the sound discretion of the district court. Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

**IV. OPINION**

The Government argues that reconsideration is warranted here because "the sole rationale for the Court's dismissal Order is now moot based upon the restoration of [CJA] funding[.]" Mot. Recons. at 3, ECF No. 31; see also Reply Mot. Recons. at 1–3, ECF No. 34. Although CJA funding is now in place, at least until January 31, 2026, the restoration of funding has done nothing to cure the constitutional injury already suffered by Defendant due to Congress's intentional decision not to provide

5

constitutionally mandated funding for over five months.  As Defendant's counsel persuasively argues,

> Mr. Ortiz has lost almost five months of trial preparation.  That cannot be undone and the recent temporary funding bill does nothing to right that wrong.  Mr. Ortiz will now be forced to choose between two constitutional rights — effective counsel or a speedy trial.  Time cannot be excluded for trial preparation when the Government created a situation that essentially denied Mr. Ortiz's counsel the ability to prepare for more than five months.

Opp'n Mot. Recons. at 3, ECF No. 33.  The Court finds that the injury suffered by Defendant, and thus the case and controversy before this Court, are far from moot.

The Government also argues that a continuance rather than dismissal is the more appropriate remedy now that funding has been restored.  Mot. Recons. at 8.  However, the Court rejects the Government's apparent contention that the recent restoration of funding is sufficient to fix the Sixth Amendment violation moving forward.  To date, it is unclear whether all CJA backlog payments have been fully disbursed.  More significantly, there is concerning evidence in this record projecting that the funding crisis may well continue in January 2026, potentially prolonging and exacerbating the injury already suffered by Defendant.  See Opp'n Mot. Recons. at 3-5; see also Opp'n Mot. Recons., Ex. A, ECF No. 33-1 (letter from Federal Public and Community Defenders to Senate Committee on Appropriations expressing concern over persistent underfunding of federal public defense); Opp'n Mot. Recons., Ex. B, ECF No. 33-2 (memo from Heather Williams, Federal Defender for the Eastern District of California, detailing ongoing financial crisis and warning "there is no guarantee we won't be back in appropriation lapse mode again come January 31,

2026"); Opp'n Mot. Recons., Ex. C, ECF No. 33-3 (letter from Administrative Office of the Courts providing update on judiciary operations under the continuing resolution and planning in case of another lapse in appropriations).[2]  Requiring defense counsel to prepare for trial now risks prolonging Defendant's pretrial detention time with no guarantee that trial preparations will be complete before the next possible shutdown.  The Court will not impose such a burden on Defendant or his counsel.

    The Court does not order dismissal without prejudice lightly and acknowledges that both the Supreme Court and the Ninth Circuit have found that dismissal of an indictment under different circumstances involving a Sixth Amendment violation is plainly inappropriate. See Reply Mot. Recons. at 5-8 and cases cited therein.  That said, this remedy is compelled by the unique circumstances before the Court in this specific case, including a prolonged CJA-funding lapse; a Defendant who has had no opportunity to adequately investigate the charge against him and properly prepare for trial; an adversary with unlimited resources who is fully prepared to go to trial; a rapidly approaching trial date; and no guarantee that the appropriation lapse that created this crisis will not occur again.  Under different facts, the Court might well reach a different conclusion. Cf., e.g., United States v. Castro, Jr., No. 2:24-cr-00074-JAM, 2025 WL 3467795 (E.D. Cal. Dec. 3, 2025) (finding Sixth Amendment violation due to CJA-funding lapse but granting a continuance rather than

---

[2] The Court takes judicial notice of these exhibits. See Daniels-Hall v. Natl. Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010) (a court may take judicial notice under Federal Rule of Evidence 201 of publicly available government documents).

ordering dismissal given the lack of a set trial date).  However, the law clearly permits the Court to remedy extreme structural defects in the criminal process such as those presented here. See Order at 5-6, ECF No. 30 (summarizing law on court's ability to dismiss indictments under supervisory authority).

The Government argues that such authority is inapplicable here, as a "district court's exercise of supervisory authority to dismiss a criminal indictment has always referred to agents and representatives of the Executive Branch" and "has never been extended to reach action (or inaction) by the Legislative Branch."  Reply Mot. Recons. at 6.  While that may be true, the Government does not cite any authority that a court's supervisory authority may not under any circumstances be exercised in response to Legislative Branch action (or inaction).

Further, the Court is not, as the Government suggests, attempting to "remedy[] failures of Congress by dismissing a valid indictment" or "deter[] Congress from future dysfunction." Id.  The Court agrees that such remedies are beyond the scope of the Court's powers here. As the Ninth Circuit has explained,

> Under their supervisory power, courts have substantial authority to oversee their own affairs to ensure that justice is done.  They do not, however, have a license to intrude into the authority, powers and functions of the coordinate branches.  Judges are not legislators, free to make laws guided only by their moral compass or notions of national interest; nor are they executive officers, vested with discretion over law enforcement policy and decisions.  Thus, while the supervisory power does empower judges to formulate procedural rules not specifically contemplated by Congress or the Constitution . . . it does not justify a chancellor's foot veto over activities of coequal branches of government . . . judges must be careful to supervise their own affairs and not those of the other branches.  The Constitution empowers the judiciary to thwart the will of the other branches only when their

behavior is not in accordance with law . . . .
United States v. Simpson, 927 F.2d 1088, 1089-91 (9th Cir. 1991) (internal quotations and citations omitted).

In the case at bar, the Court is imposing a remedy that will fix a concrete and particularized injury suffered by this Defendant. The Defendant has been demonstrably prejudiced and the relief ordered is appropriate under the circumstances to assure him the effective assistance of counsel and a fair trial. That such injury stems from Legislative rather than Executive Branch action does not change the nature of the injury suffered, nor the Court's conviction that dismissal without prejudice is an available and appropriate remedy for that injury. See United States v. Matta-Ballesteros, 71 F.3d 754, 763 (9th Cir. 1995) (explaining that a court may exercise its supervisory powers to dismiss an indictment in order to, among other things, "implement a remedy for the violation of a recognized statutory or constitutional right").

This Court is also aware, of course, that there is disagreement among the Judges in this District as to whether dismissal of the indictment is the appropriate remedy here. See United States v. Vasquez, No. 2:25-cr-00135-WBS, 2025 WL 2961906 (E.D. Cal. Oct. 20, 2025) (finding no Sixth Amendment violation and denying dismissal); United States v. Evanovich, No. 2:24-CR-00079-DJC, 2025 WL 3208308 (E.D. Cal. Nov. 17, 2025) (finding Sixth Amendment violation and granting continuance but denying dismissal). Now that funding for the attorney representing Defendant has been (or will soon be) restored, it is fair to ask what remedy dismissal without prejudice practically provides

given the Government's ability to immediately seek a new indictment.

The answer, in this Court's opinion, is that a dismissal without prejudice gives the Defendant the relief to which he is legally entitled — a more even playing field given that his trial is currently set for January 26, 2026, and he has had no opportunity to investigate the charge against him or prepare his defenses. Dismissal requires the Government to start over and decide whether seeking a new indictment under these circumstances is fair and just. Dismissal also puts the Defendant back to the position he was in before his constitutional right to counsel was violated. Finally, dismissal preserves the integrity of the judicial process.

Once again, it is worth noting that this case presents a situation never before faced by this Court – an intentional decision by Congress not to provide the resources required by a Defendant to properly defend himself against a serious criminal charge. Given the extraordinary nature of the constitutional violation here and the prejudicial impact it has had on Defendant, a dismissal of the indictment without prejudice allows the criminal justice system to operate as it is intended. The prosecutor's code is not to achieve convictions under such circumstances as these, where a Defendant has a looming trial date and has been given no resources to mount an effective defense. The job of the prosecutor is to do justice. Sometimes, as in this case, that means starting the process over, including reconsidering whether a federal indictment is warranted. This Court, therefore, finds that dismissal of the indictment without

prejudice is the lawfully appropriate remedy — that is, it is the remedy that allows the Court to ensure that all Parties receive justice under the law.

## V.   ORDER

For the reasons set forth above, the Government's Motion for Reconsideration (ECF No. 31) is DENIED. The Indictment (ECF No. 1) in this matter is hereby DISMISSED WITHOUT PREJUDICE. The December 9, 2025, trial confirmation hearing and January 26, 2026, trial date in this matter are VACATED. Defendant shall, forthwith, be released from custody.

IT IS SO ORDERED.

Dated: December 8, 2025

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

11